# EXHIBIT A

I. DOMINIC SIMEONE, ESQUIRE (Attorney Id.: 006911991)
MICHAEL R. HAHN, ESQUIRE (Attorney Id.: 024242007)
**SIMEONE & RAYNOR, LLC**
Harvard Law Building
1522 Route 38
Cherry Hill, New Jersey 08002
(856) 663-6700 – Telephone
(856) 663-6701 – Facsimile
Email: dsimeone@srnjlawfirm.com
Email: mhahn@srnjlawfirm.com
*Attorneys for Plaintiff, The Enclave Condominium Association, Inc.*

| | | |
|---|---|---|
| | : | SUPERIOR COURT OF NEW JERSEY |
| THE ENCLAVE CONDOMINIUM | : | LAW DIVISION |
| ASSOCIATION, INC. | : | ATLANTIC COUNTY |
| | : | |
| Plaintiff, | : | DOCKET NO.: ATL-L- |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| ELITE RESTORATION, INC., | : | |
| CHARLES CULBERTSON, III, | : | |
| STRUCTURAL DESIGN | : | |
| ASSOCIATES, INC. ANDREW | : | |
| SCHEERER and JOHN DOE(S) 1-5 | : | **VERIFIED COMPLAINT** |
| JOHN DOE(S) 6-10 and XYZ | : | |
| CORP(S). 1-10 | : | |
| | : | |
| Defendants | : | |
| | : | |

Plaintiff, **THE ENCLAVE CONDOMINIUM ASSOCIATION, INC.**, (hereinafter

"the Association") with its principal offices being 3851 Boardwalk, Atlantic City, New

Jersey, by way of Verified Complaint against the Defendant(s), says:

# PARTIES

1.      Plaintiff, a condominium association located in Atlantic City New Jersey is a Nonprofit Corporation of the State of New Jersey in accordance with N.J.S.A. 15A1:1-1 et seq.

2.      Defendant, Elite Restoration, Inc. (hereinafter "Elite") is a contractor licensed to do business in the State of New Jersey under Home Improvement Contractors License number 13VH04114300 and has a principal place of business located at 24 Hagerty Blvd, Suite 2, West Chester Pennsylvania.

3.      Defendant, Charles Culbertson III, is the president of Elite and has a principal address located at 24 Hagerty Blvd, Suite 2, West Chester Pennsylvania.

4.      Defendant, Structural Design Associates, Inc. (hereinafter "SDA"), is a structural engineering firm with a principal place of business located at 356 North Pottstown Pike, Suite 300, Exton Pennsylvania.

5.      Andrew Scheerer, P.E. (hereinafter "Scheerer"), is a professional engineer & land surveyor presumably licensed to practice in the State of New Jersey under license number 24GE04465200, and has a principal place of business located at 356 North Pottstown Pike, Suite 300, Exton Pennsylvania.

6.      Upon information and belief John Doe(s) 1-5, their names being fictitious, are individuals who acted as subcontractors Defendant Elite Restoration, Inc or are otherwise liable to Plaintiff as a result of the same series of transactions or occurrences.

7.     Upon information and belief John Doe(s) 6-10, their names being fictitious, are individuals who acted as engineers employed by Defendant Structural Design Associates, Inc or are otherwise liable to Plaintiff as a result of the same series of transactions or occurrences.

8.     Upon information and belief XYZ Corp(s), their names being fictitious, are business entities who acted as subcontractors Defendant Elite Restoration, Inc or are otherwise liable to Plaintiff as a result of the same series of transactions or occurrences.

## FACTS COMMON TO ALL COUNTS

9.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

10.     Plaintiff, pursuant to their governing documents is responsible for the repair and replacement of the Association's common elements.

11.     As part of their duties to repair and replace the common elements Plaintiff began planning a major renovation of the building's façade and balconies.

12.     Plaintiff as a collection of individual unit owners who do not have the sophistication or technical knowledge to create the specifications for the project and began searching for an engineer to help them with the renovation.

13.     In and around 2016, Plaintiff retained SDA to draft specifications for the renovation to their building's façade and balconies. **See Exhibit A attached to this Verified Complaint, a true and correct copy of the job specifications drafted by SDA**.

14.     The specifications as developed by SDA and Scheerer called for the "install[ation] of new 15 year balcony coating [manufactured] by Sika at all balcony floors with urethane perimeter at slab/wall and around existing doors. Install urethane at ceiling/wall and install acrylic coating on balcony ceilings. Patch all rail pockets …. Add allowance to re-pitch 60% of decks **to existing scuppers** +/- 3/4:" **Exhibit A**.

15.     The specifications did not call for, indicate, or otherwise suggest that the existing scuppers were to be covered and/or adjusted in any way.

16.     Upon the issuance of the specifications, SDA began receiving bids on behalf of Plaintiff.

17.     On or about February 21, 2017, Elite submitted a bid to be the contractor for the project. The bid was amended several times with the final bid being in the amount of $2,660,000.00 plus a 3% charge for the bond. **See Exhibit B attached to this Verified Complaint, a true and correct copies of the bids received from Elite.**

18.     Plaintiff authorized and took out a loan to pay for the project and imposed a special assessment on its members to repay the loan.

19.     On or about January 21, 2018, the Association retained SDA to act as the architect/consulting engineer for the project. **See Exhibit C attached to this Verified Complaint, a true and correct copies of the Consulting Engineer Agreement.**

20.     This agreement was later amended on June 8, 2018, however there were no significant changes to the agreement. **See Exhibit D attached to this Verified Complaint, a true and correct copies of the Amended Consulting Engineer Agreement**.

21.     Pursuant to the Engineering Agreement, SDA agreed to prepare an "AIA Contract" between Plaintiff and Elite.

22.     Upon information and belief AIA stands for the American Institute of Architects a national organization that provides forms for use by its members, these forms include standard contract forms.

23.     Upon information and belief that while some forms produced by the AIA are drafted for jurisdictions, most forms were not drafted to ensure they complied with the laws of any particular state.

24.     The contract form selected by SDA was AIA Document A104-2017, a general form agreement between an owner and a contractor (hereinafter "the Elite Contract") which was not drafted specifically for use in New Jersey. **See Exhibit E attached to this Verified Complaint, a true and correct copies of the Amended Consulting Engineer Agreement**.

25.     Section 3.2.2 of the Elite Contract incorporates the bid submitted by Elite and shows a grand total in the amount of $2,770,224.00. **See Exhibit E**.

26.     Pursuant to recitals SDA was identified as the architect for the project. **See Exhibit E**.

27.     Pursuant to Article 10 of the Elite Contract, SDA was required to provide administration of agreement until final payment was authorized. **Exhibit E**.

28.     Pursuant to Section 10.8, SDA was given the authority to interpret and decide matters concerning performance under, and requirements of, the Contract Documents. **Exhibit E**.

29.     Further, SDA was given authority to make initial decisions on all claims, disputes, and other matters in question between the Owner and Contractor. **Exhibit E**.

30.     On or about January 17, 2020, Elite, the Association and SDA agreed to a change order reducing the total contract price to $2,763,645.34 dated December 19, 2019. **See Exhibit F attached to this Verified Complaint, a true and correct copies of the Change Order dated December 6, 2019**.

31.     In 2019, Elite in contravention of the job specifications and the parameters of their own bid, and without authorization from SDA pursuant to Section 10.8 of the Elite Contract began exceeding the scope of work under the contract.

32.     Specifically, Elite took it upon itself, without the consent or authorization of SDA or the Association to adjust the weep holes drilled into the walls to prevent water from being trapped under the exterior façade known as "scuppers" even though the job specifications stated that the existing scuppers were to be retained.

33.     Further, Elite took it upon itself, without the consent or authorization of either SDA or the Association to re-pitch 100% of each deck when the job specification called for 60% of each deck to be re-pitched.

34.     On or about January 7, 2020 Elite submitted a request for change order for adjusting the scuppers in the amount of $524,432.00. **See Exhibit G attached to this Verified Complaint, a true and correct copies of the Change Order dated January 7, 2020**.

35.     On or about June 9, 2020, Elite submitted a request for change order to be approved by the Association and SDA in the amount of $1,379,950.00 for changing the pitch of the decks for 100% of the deck area. **See Exhibit H attached to this Verified Complaint, a true and correct copies of the Change Order dated June 9, 2020**.

36.     The total requests for change order was in the amount of $1,904,332.00.

37.     The request for change order was reviewed by SDA and Andrew Scheerer and denied as the requested changes were unnecessary and outside the scope of the project. **See Exhibit I attached to this Verified Complaint, a true and correct copy of the Denial of the Change Orders dated August 3, 2020**.

38.     Further video evidence documented that it took only minutes to adjust each scupper and Elite's change order billed for approximately 5 hours labor for each scupper, this represents approximately a Two Thousand percent (2,000.00%) difference in the time

worked and the time billed and was clearly a fabrication designed to increase the bill. **See Exhibit I**.

39.     On August 4, 2020, the day after receiving notice that the change orders were not approved, Elite filed for arbitration to establish the value of a potential construction lien pursuant to the New Jersey Construction Lien Law <u>N.J.S.A.</u> 2A:44A-1 to -38. **See Exhibit J attached to this Verified Complaint, a true and correct copy of the Construction Lien Law Arbitration Request and Transmittal Letter.**

40.     An oral hearing was conducted on August 28, 2020, and a written opinion was issued by the arbitrator on the same day. **See Exhibit K attached to this Verified Complaint, a true and correct copy of the Arbitrator's Decision.**

41.     According to paragraph 3 of the arbitrator's decision, Elite did not amend or withdraw any claims.

42.     Pursuant to the arbitrator's written statement, Elite claimed that the total retainage was approximately ten percent (10%) of the contract's value in the amount of Two Hundred Sixty-Five Thousand Fourteen Dollars and Fifty-Three Cents ($265,014.53).

43.     This means that even though the Construction Lien Arbitration was pending, Elite failed to amend their request to include the unapproved change orders be included in their claim. **Exhibit K page 4.**

8

44.     The Arbitrator offset the lien claim amount to One Hundred Eighty-Seven Thousand Fourteen Dollars and Fifty-Three Cents ($187,014.53) related to corrective work that was not completed by Elite. **Exhibit K page 4.**

45.     The Arbitration specifically held that the total unpaid portion of the contract price, pursuant to N.J.S.A. 2A:44A-9 was in the amount of $187,014.53. **Exhibit K page 2.**

46.     Pursuant to the arbitrator's decision, Elite filed a construction lien in the amount of $187,014.53 on September 10, 2020 **See Exhibit L attached to this Verified Complaint, a true and correct copy of the filed construction lien.**

47.     The Enclave fully satisfied the lien and Elite acknowledge and agreed that the contract was completed and fully satisfied by discharging the lien as of record on October 22, 2020. **See Exhibit M attached to this Verified Complaint, a true and correct copy of the filed construction lien.**

48.     On or about May 26, 2021, Elite filed for binding arbitration with the American Arbitration Association (AAA) under case number 21-0004-0420 seeking payment on the unapproved change orders. **See Exhibit N attached to this Verified Complaint, a true and correct copies of the Arbitration Demand**.

**FIRST COUNT**
**(Declaratory Judgment Staying Arbitration)**

49.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

50.     Pursuant to the arbitrator's decision dated August 28, 2020, the total contract price related to the Elite Contract was $2,762,645.34 **See Exhibit K**.

51.     The arbitrator further ruled that Plaintiff was entitled to a $78,000.00 set off. **See Exhibit K**.

52.     As a result, the arbitrator found that the total due and owing under the Elite Contract was in the amount of $187,014.53. **See Exhibit K**.

53.     Elite acknowledged receipt of payment in the amount of the arbitration award and released their lien claim. **See Exhibit M**.

54.     By accepting payment and releasing their lien claim Elite acknowledged that the contract was fully satisfied and discharged.

55.     Pursuant to the applicable case law the contract has been completed and as such under a theory of Accord and Satisfaction and/or the Entire Controversy Doctrine the arbitration clause is no longer enforceable.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands declaratory judgment in their favor:

A.      Declaring that accepting payment and releasing their lien claim Elite acknowledged that the contract was fully satisfied and discharged;

B.      Declaring that the arbitration provisions contained within the Elite Contract are unenforceable with respect to any claim arising out of a dispute over the unapproved Change Orders;

C.      Permanently staying the AAA arbitration proceeding pending under case number 21-0004-0420 pursuant to N.J.S.A. 2A:23B-6(b);

D.      Awarding Plaintiff attorney's fees and cost of suit; and

E.      Any other relief the Court deems just and equitable.

## SECOND COUNT
## (Declaratory Judgment in the Alternative Staying Arbitration)

56.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

57.     Plaintiff is a consumer of goods and services as defined by the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 to -20 (CFA) and as determined by the applicable case law.

58.     Upon information and belief, the Elite Contract is an AIA form A104-2017 form contract which has never been specifically approved by any New Jersey Court.

59.     The Elite Contract was prepared by Defendant, Andrew Scheerer, Plaintiff's engineer.

60.     Upon information and belief Defendant, Andrew Scheerer selected the box for arbitration in Section 5 of the Elite Contract without the knowledge or consent by any party.

61.     Pursuant to the N.J.S.A. 56:12-1(1)(f), a consumer contract is a written agreement which contracts for services.

11

62.     Pursuant to N.J.S.A. 56:12-2 all consumer contracts are to be "written in a simple, clear, understandable and easily readable way."

63.     N.J.S.A. 56:12-10 offers guidelines for courts to follow to determine if a consumer contract is written in accordance with the New Jersey Plain Language Act N.J.S.A. 56:12-1 to -13.

64.     The Elite contract violates N.J.S.A. 56:12-10(a)(1) by containing cross references that are confusing.

65.     Sections of the Elite Contract are confusingly and/or improperly titled in further violation of N.J.S.A. 56:12-10(a)(1).

66.     The arbitration selection clauses fail to reference the section where the scope of arbitration is established in further violation of  N.J.S.A. 56:12-10(a)(1).

67.     The Elite contract violates N.J.S.A. 56:12-10(a)(4) by containing sentences and sections that are in a confusing or illogical order.

68.     The Elite Contract does not contain any language that specifically and unambiguously advised Plaintiff that they were waiving the right to a trial and were subject to mandatory binding arbitration.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands declaratory judgment in their favor:

A.     Declaring that the arbitration provisions contained within the Elite Contract violate the New Jersey Plaint Language Act <u>N.J.S.A.</u> 56:12-1 to -13;

B.     Declaring that the arbitration provisions contained within the Elite Contract are void and unenforceable with respect to any claim arising out of a dispute over the unapproved Change Orders;

C.     Permanently staying the AAA arbitration proceeding pending under case number 21-0004-0420 pursuant to <u>N.J.S.A.</u> 2A:23B-6(b);

D.     Awarding Plaintiff attorney's fees and cost of suit; and

E.     Any other relief the Court deems just and equitable.

## THIRD COUNT
### (Declaratory Judgment in the Alternative Staying Arbitration)

69.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

70.     The job specifications, which defined the scope of the work were drafted by Defendant, Andrew Scheerer. **See Exhibit N at page 6**.

71.     As stated in Elite's Arbitration Demand, "The scope of the work did not include any adjustments of the existing scupper drains on the balconies nor did it include

any work to enhance drainage other than installing and sloping of a skim coat of no more than 50% of the balcony area." **See Exhibit N at page 6**.

72.     Defendant, Andrew Scheerer, as permitted by Section 10.8 of the Elite Contract determined that the change order requested was not part of the Elite Contract. **Exhibit I**.

73.     Upon information and belief Defendant, Andrew Scheerer denied the requested change orders for the following reasons:

a.     The Elite contract called for the retention of the original scuppers and adjusting the scuppers was outside the scope of the Elite Contract;

b.     The Elite Contract called for installing a skim coat and sloping more than 60% of the deck surface area and sloping 100% of the deck was outside the scope of the Elite Contract;

c.     Sloping 100% of the deck area was unnecessary;

d.     The specifications were drafted to permit proper drainage and any issues with drainage resulted from Elite failing to comply with the job specifications;

e.     Elite was negligent in applying the skim coating and the need to adjust the scuppers was proximately caused by Elite's negligence;

f.     The allowance for materials in the bid and specifications was not exceeded; and

14

g.    It appeared that the change orders included unnecessary and overbilled for the labor charges by an exorbitant amount.

74.    As a result, to the extent that the arbitration clauses contained within the Elite Contract are legally binding in the State of New Jersey, they do not apply to the Changes Orders.

75.    The change order to adjust the scuppers and the change order to slope 100% of the deck area represent new offers to contract that were not subject to the provisions of the Elite Contract, nor were the offers to contract accepted and made part of the Elite contract by Plaintiff.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands declaratory judgment in their favor:

A.    Declaring that the unapproved Change Orders represent new offers to contract and are not subject to the provisions of the Elite Contract;

B.    Declaring that the arbitration provisions contained within the Elite Contract are unenforceable with respect to any claim arising out of a dispute over the unapproved Change Orders;

C.    Permanently staying the AAA arbitration proceeding pending under case number 21-0004-0420 pursuant to N.J.S.A. 2A:23B-6(b);

D.    Awarding Plaintiff attorney's fees and cost of suit; and

E.    Any other relief the Court deems just and equitable.

## FOURTH COUNT
### (Per Se Consumer Fraud Act Violation Against Elite)

76.     Plaintiff repeats each and every allegation set forth in this Verified
Complaint as if set forth herein in its entirety.

77.     Pursuant to the applicable case law, Plaintiff is a consumer pursuant to the
Consumer Fraud Act.

78.     The Contractor's Registration Act N.J.S.A. 56:8-136 to-152 extends the
protections of the Consumer Fraud act in that a violation of the Contractor's Registration
Act is per se a violation of the Consumer Fraud Act.

79.     As used in Contractor's Registration Act a "Contractor" is a person engaged
in the business of making or selling home improvements.

80.     Further, a "Home improvement" is defined as remodeling, altering,
renovating, repairing … or otherwise improving or modifying of the whole or any part
of any residential or non-commercial property."

81.     Even further, a "Residential or non-commercial property" is defined as
"multi-unit structure used in whole or in part as a place of residence, and all structures
appurtenant thereto, and any portion of the lot or site on which the structure is situated
which is devoted to the residential use of the structure."

82.     Defendant Elite was operating as a home improvement contractor as
defined by the Contractor's Registration Act during the course of work on Plaintiff's
property.

16

83.     Pursuant to <u>N.J.A.C.</u> 13:45A-16.2(a)(12) any home improvement contract or changes thereto over $500.00 must be in writing and executed by all parties.

84.     Defendant Elite failed to comply with its statutory and regulatory obligations by attempting to change the terms and conditions of the Elite Contact by completing the work prior to having a change order executed by all parties.

85.     Further, Defendant Elite started and continued the work after having been informed that the change order was specifically disapproved by Plaintiff and Defendant, Andrew Scheerer.

86.     These statutory and regulatory violations are per se violations of the CFA.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc. under a theory of consumer fraud and awarding:

A.     Actual damages in an amount to be determine by the trier of fact;

B.     Treble damages pursuant to the applicable New Jersey Consumer Fraud Act Provisions;

C.     Awarding Plaintiff attorney's fees and cost of suit pursuant to the Consumer Fraud Act; and

D.     Any other relief the Court deems just and equitable.

17

## FIFTH COUNT
### (Consumer Fraud Act Violation
### Against Elite and Charles Culbertson, III)

87.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

88.     Pursuant to the CFA "The act, use or employment by any person of any unconscionable commercial practice, … is declared to be an unlawful practice".

89.     Defendant, Elite, by and through Defendant, Charles Culbertson, III submitted a change order and invoice for adjusting the scuppers indicating that each scupper took 5 man-hours to complete. **See Exhibit G stating that each scupper adjustment was billed at $648.00.**

90.     Video evidence shows that each scupper took approximately mere minutes to complete.

91.     This represents an over billing of approximately 2,000.00%.

92.     This change order constitutes an attempt by Elite and Charles Culbertson, III to commit fraud and is an unconscionable business practice prohibited by the Consumer Fraud Act.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc. and Charles Culbertson, III, under a theory of consumer fraud and awarding:

A.     Actual damages in an amount to be determine by the trier of fact;

18

B.      Treble damages pursuant to the applicable New Jersey Consumer Fraud Act Provisions;

C.      Awarding Plaintiff attorney's fees and cost of suit pursuant to the Consumer Fraud Act; and

D.      Any other relief the Court deems just and equitable.

## SIXTH COUNT
### (Consumer Fraud Act Violation
### Against Elite and Charles Culbertson, III)

93.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

94.     Upon information and belief, Defendant, Elite, engaged in concrete work in conditions that did not permit concrete to be poured and cure correctly.

95.     As a result of this negligence, there were multiple issues with the concrete and Defendant, Elite, by and through Defendant, Charles Culbertson, III, purposely attempted to conceal the fact that the work was done improperly and used the damage caused by their poor workmanship as an excuse to submit a change order.

96.     Defendant Elite intended for Plaintiff to rely on their concealment to approve the change order in violation of the Consumer Fraud Act.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc. and Charles Culbertson, III, under a theory of consumer fraud and awarding:

19

A.      Actual damages in an amount to be determine by the trier of fact;

B.      Treble damages pursuant to the applicable New Jersey Consumer
        Fraud Act Provisions;

C.      Awarding Plaintiff attorney's fees and cost of suit pursuant to the
        Consumer Fraud Act; and

D.      Any other relief the Court deems just and equitable.

## SEVENTH COUNT
### (Common Law Fraud
### Against Elite and Charles Culbertson, III)

97.      Plaintiff repeats each and every allegation set forth in this Verified
Complaint as if set forth herein in its entirety.

98.      Defendant Elite by and through Defendant, Charles Culbertson, III,
engaged in common law fraud by submitting change orders for work that included a
2,000.00% overcharge in man-hours.

99.      Defendant Elite Defendant, Charles Culbertson, III, further engaged in
common law fraud by purposely concealing their negligence to support a request for a
change order that would substantially increase the contract price.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc., and Charles Culbertson, III, under a theory of common law fraud and awarding:

      A.    Actual and punitive damages in an amount to be determined by the trier of fact;

      B.    Awarding Plaintiff attorney's fees and cost of suit; and

      C.    Any other relief the Court deems just and equitable.

## EIGHT COUNT
### (Breach of Contract Against Elite)

100.    Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

101.    Every contract in the State of New Jersey includes an implied covenant of good faith and fair dealing, Defendant Elite breached their obligations by committing acts of Consumer Fraud and Common Law Fraud.

102.    Defendant Elite further failed to comply with their obligations under the contract by failing to perform their work in a good workman like manner.

103.    Specifically, Defendant Elite negligently completed the deck sloping in a manner inconsistent with the job specification and which did not permit proper drainage resulting in additional work being done to adjust the scuppers.

21

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc., under a theory of breach of contract and awarding:

      A.     Actual damages in an amount to be determined by the trier of fact;

      B.     Awarding Plaintiff attorney's fees and cost of suit; and

      C.     Any other relief the Court deems just and equitable.

### NINETH COUNT
### (Negligence Against Elite)

104.    Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

105.    Defendant Elite negligently completed the deck sloping in a manner inconsistent with the job specification.

106.    As a result of the negligence the decks did not drain properly and additional work was needed to permit proper drainage.

107.    Said negligence was the proximate cause of Plaintiff's damages.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Elite Restoration, Inc., under a theory of negligence and awarding:

      A.     Actual damages in an amount to be determined by the trier of fact;

      B.     Awarding Plaintiff attorney's fees and cost of suit; and

      C.     Any other relief the Court deems just and equitable.

## TENTH COUNT
## (Malpractice against
## Structural Design Associates, Inc. and Andrew Scheerer
## in the alternative)

108.    Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

109.    SDA and Defendant, Andrew Scheerer, were retained by Plaintiff to draft the specifications for the renovation project.

110.    In their arbitration application Elite has alleged that the specifications were incorrect and insufficient.

111.    Plaintiff are a collection of homeowners and do not have the sophistication and technical expertise to understand and to create specifications for major renovation projects to their building and relied completely on SDA and Defendant, Andrew Scheerer to draft proper specifications for the renovation project.

112.    To the extent that Plaintiff is found liable to Defendant Elite, that liability is the result of Defendant, Structural Design Associates, Inc. failure to draft proper specifications.

113.    Further, by failing to draft the proper specifications Plaintiff was unaware of the total cost of the project, had they been aware of the total cost they would not have undertaken the project.

114.    The failure to draft proper specifications fell below the standard of care for an engineer and constitutes professional negligence.

115.     Any damages awarded to Elite is the direct and proximate result of SDA and Defendant, Andrew Scheerer's negligence in drafting the job specifications.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands judgment in their favor against Defendant, Structural Design Associates, Inc. and Defendant, Andrew Scheerer, under a theory of malpractice and awarding:

A.     Actual damages in an amount equal to any award to Defendant Elite Restoration, Inc.;

B.     Awarding Plaintiff attorney's fees and cost of suit; and

C.     Any other relief the Court deems just and equitable.

### ELEVENTH COUNT
### (Declaratory Judgment in the Alternative Compelling Structural Design Associates, Inc. and Andrew Scheerer to participate in Arbitration)

116.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

117.     Defendant Elite did not name Defendant Structural Design Associates, Inc. or Defendant, Andrew Scheerer as parties to the AAA arbitration proceeding.

118.     Defendant Structural Design Associates, Inc. by and through Defendant, Andrew Scheerer, selected the binding arbitration provision in Section 5 of the Elite Contract.

119.     As the engineer, Defendant, Andrew Scheerer, drafted the specifications for the scope of work.

120.    As the identified architect, Defendant Structural Design Associates, Inc. or Defendant, Andrew Scheerer, were responsible for determining if installment payments were to be paid and if change orders were appropriate.

121.    There is the significant potential that an arbitration can find that the specifications were not properly drafted, and that Plaintiff is required to and face the real possibility of multiple inconsistent determinations by triers of fact.

122.    If the Court finds that the arbitration provisions are enforceable and compels Plaintiff to participate in arbitration, it would be unconscionable to allow the party that selected arbitration to avoid the proceeding and force Plaintiff to proceed along dual tracks.

123.    Plaintiff would face the real possibility of facing multiple inconsistent verdicts.

124.    Specifically, the arbitrator could find that the specifications were improperly drafted, and that Elite is entitled to payment for the change orders.

125.    Later a jury could find that the specifications were properly drafted and that SDA and Defendant Andrew Scheerer are not liable to Plaintiff.

126.    This puts Plaintiff in a fundamentally unfair and unjust position which must not be countenanced by the court, especially since SDA and Defendant, Andrew Scheerer created this potential by selecting arbitration in the Elite Contract.

127.     By drafting the Elite Contract and by selecting the binding arbitration provision and identifying themselves as a party with obligations under the contract, Defendant Structural Design Associates, Inc. or Defendant, Andrew Scheerer consented and agreed to be bound by binding arbitration for any claim arising out of the Elite Contract and have refused to participate in same.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands declaratory judgment in the alternative if the Court upholds the arbitration provisions in the Elite Contract:

A.     Compelling Defendant Structural Design Associates, Inc. or Defendant, Andrew Scheerer to participate in the AAA arbitration proceeding pending under case no 21-0004-0420 pursuant to N.J.S.A. 2A:23B-6(b);

B.     Awarding Plaintiff attorney's fees and cost of suit; and

C.     Any other relief the Court deems just and equitable.

### TWELFTH COUNT
### (Declaratory Judgment of Accord and Satisfaction Against Elite)

128.     Plaintiff repeats each and every allegation set forth in this Verified Complaint as if set forth herein in its entirety.

129.     Plaintiff, when making the $187,014.53 to Elite intended said payment to fully satisfy any and all claims Eilte may have against them related to the Elite Contract.

130.    Elite, when they accepted payment in the amount of $187,014.53 intended to release any and all claims they may have against Plaintiff.

131.    Pursuant to applicable law, the payment from Plaintiff to Elite constituted an Accord and Satisfaction of all of Elite's claims arising under the Elite Contract.

**WHEREFORE**, Plaintiff, The Enclave Condominium Association, Inc., demands declaratory judgment under a theory of Accord and Satisfaction:

A.    Finding that all of Elite's claims arising under the Elite contract were resolved by the payment from Plaintiff to Elite in the amount of $187,014.53; and

B.    Awarding Plaintiff attorney's fees and cost of suit; and

C.    Any other relief the Court deems just and equitable.


**SIMEONE & RAYNOR, LLC**
*Attorneys for Plaintiff*

Dated:   June 16, 2021                              /s/ I. Dominic Simeone
                                                    I. DOMINIC SIMEONE


**SIMEONE & RAYNOR, LLC**
*Attorneys for Plaintiff*

Dated:   June 16, 2021                              MICHAEL R. HAHN

# EXHIBIT B

## EXHIBIT "A"

## CLAIMANT'S STATEMENT OF CLAIM

This dispute is between **Elite Restoration, Inc.** (hereinafter "Elite") and **The Enclave Condominium Association, Inc.** (hereinafter "The Association") in connection with a written contract (the "Contract") dated April 19, 2018 entered into between Elite and The Association for a project known as the Enclave Condominium Façade & Balcony Coating Project #16041 (hereinafter "Project").

Elite is a restoration contractor having a principal place of business at 24 Hagerty Boulevard, Suite 2, West Chester, Pennsylvania 19382. The Association is a community association for a condominium known as "The Enclave," which is a multi-story and multi balcony high rise residential condominium building located at 3851 Boardwalk, Atlantic City, New Jersey 08401 ("Property").

The work under the Contract and for the Project included certain restoration work for the building façade and unit balconies. The claim that is subject to the arbitration relates to two change order requests submitted by Elite to The Association in connection with the Project as a result of change conditions encountered by Elite while performing the balcony resurfacing work at The Enclave. The original scope of the balcony resurfacing work consisted of removing the existing waterproofing surface coating on the balcony, concrete patching of no more than 2% of the balcony area (i.e., the total square footage of the balcony surface), placement and sloping of a skim coat on the existing concrete deck of no more than 50% per balcony area (i.e., the total square footage of the balcony surface) and installation of a liquid applied waterproofing membrane manufactured by Sika.

The Association and its engineer were responsible for defining the scope of work in the Contract, not Elite.  The Association and its engineer consciously decided to limit the scope of work and set the allowances for the concrete deck sloping and concrete patching at the percentages mentioned above to reduce the bid prices in order to meet The Association's budget for the Project. Their collective decision to limit the scope of work and not provide a design that fully addressed the drainage issues to alleviate The Association's concerns about water ponding on the balconies resulted in Elite having to perform the additional work that comprised the change order claims that are in dispute in this case.

The original base contract scope of work did not include any adjustment of the existing scupper drains on the balconies nor did it include any work to enhance drainage other than installing and sloping of a skim coating of no more than 50% of the  balcony area. Because of unknown, concealed conditions with respect to the concrete underlying the existing topping coat for the balconies and the balcony threshold elevation, and in order to satisfy The Association's requests to address water ponding on the balconies, Elite had to: (1) remove a significant amount more of the existing balcony concrete to a depth more than required under the contract documents; (2) mix and re-pour concrete to replace the excess removed concrete material; (3) install and slope vastly more than a skim coat; (4) adjust the scupper drains on the balconies by, among other work, re-drilling openings for them as they were set too high to allow water to adequately drain

from the resurfaced balconies; and (5) clean out the existing vertical drainage slots along the edge of the concrete balconies where they met the vertical balcony wall.

Elite timely notified The Association's engineer (Andrew Scheerer of Structural Design Associates) of the changed conditions and additional work associated therewith and subsequently issued a formal notification of the changed conditions to The Association's engineer on April 9, 2019 through a document titled "Change In Condition No. 1" summarizing the changed conditions and the additional work arising from such changed conditions. A copy of "Change In Condition No. 1" is attached hereto as **Exhibit A-1**. On October 17, 2019, Elite sent a letter to The Association indicating that Elite had exceeded the aggregate allowance for the skim coat sloping and requested a meeting. A follow up request for a meeting was sent by Elite on November 26, 2019 through the submission of "Change In Condition No. 2." Elite eventually had the meeting with The Association and engineer, which at said meeting, the Association emphasized its concerns about water ponding on certain balconies and directed Elite to re-work certain unit balconies to address the water ponding even though the skim coat sloping allowance had been exceeded. The Association's and engineer's directive at the time was to perform the necessary work to address the water ponding knowing that such work was beyond the specified allowances and original scope of work in the Contract.

**Additional Sloping Change Order Request**

On August 20, 2019, Elite submitted a proposed change order to The Association for the additional skim coat sloping work.  Subsequently, Elite submitted a supplemental and revised change order request for the additional skim coat sloping work, identified as Change Order Request # 6 titled "Additional Balcony Deck Surface and Re-Sloping Work" dated 6/09/2020 in the sum of $1,379,950.00 ("Additional Sloping Change Order Request"). A copy of the Additional Sloping Change Order Request is attached hereto as **Exhibit A-2**. Specific detail of the basis of the change order request for additional compensation associated with the additional work for the balcony resurfacing can be found attached to the change order request.

In a letter dated August 3, 2020 The Association, through its engineer, improperly rejected the Additional Sloping Change Order Request.

**Scuppers Change Order Request**

Elite formally notified The Association's engineer on April 19, 2019 of the scupper relocation work being performed, which was not in the original scope of work. On July 1, 2019, Elite submitted a proposed change order for time and material costs associated with the additional work relating to the adjustment of the scupper drains for a few of the units. The engineer observed and acknowledged the additional scupper work being performed and at no time instructed Elite to stop performing the additional work as the engineer know that this work was necessary to meet The Association's request to address the water ponding on the balconies. Elite submitted proposed change orders on November 19, 2019 and again on December 5, 2019 for the adjustment of the scuppers and cleaning out the slots along the balcony edge where it meets the vertical wall to aid water drainage off of the unit balconies.  In December 2019, The Association's engineer acknowledged that Elite was entitled to a change order for the additional

work relating to the adjustment of the scupper drains and would process a change order for the additional work. The engineer, however, never did so.

Elite submitted a proposed change order (PCO No. 1) titled "Scupper and Slot" dated January 7, 2020 in the sum of $524,432.00, which included the additional work relating to the scuppers and cleaning out the slots for all unit balconies. A copy of PCO No. 1 is attached hereto as **Exhibit A-3**. In May of 2020, The Association rejected Elite's change order request stating that the "change order is excessive, unreasonable, and should have been included in the specifications or bid as an extra." After being rejected by The Association, Elite submitted a supplemental change order request through Change In Condition (CIC) No. 5 dated 6/19/20, which provided additional information and support for the change order request. A copy of CIC No. 5 is attached hereto as **Exhibit A-4**. PCO No. 1 and CIC No. 5 are collectively referred as the Scupper Change Order Request.

In a letter dated August 3, 2020, The Association's engineer improperly rejected the Scupper Change Order Request.

**Violation of New Jersey's Prompt Payment Act**

Elite is a "prime contractor" within the meaning of the New Jersey Prompt Payment Act ("PPA"), *N.J.S.A.* §2A:30A-1 *et seq.* The labor and materials furnished by Elite under the Contract and for the Project constitute "improvements" within the meaning of the PPA. The labor and the materials furnished by Elite in connection with the Additional Sloping Change Order Request and the Scupper Change Order Request have been accepted by The Association. The Association's refusal to pay the labor and materials furnished by Elite in connection with said change order requests constitutes a violation of the PPA, entitling Elite to the principal amount owed plus interest at the prime rate plus 1% for the duration of the late payment, and reasonable costs and attorneys' fees.

**Relief Sought by Elite**

Elite is seeking relief for the principal sum of $1,904,382.00 plus interest and attorneys' fees under the PPA, and other relief the arbitrator deems appropriate.

KAPLIN STEWART MELOFF REITER & STEIN, PC

_____

William D. Auxer, Esquire
Counsel for Claimant

Dated: May 25, 2021

6961311v3

# EXHIBIT C

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**
BY:  WILLIAM D. AUXER, ESQUIRE
      NATALIE R. YOUNG, ESQUIRE
Attorney I.D. No. 255602017, 903672012
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037      Attorneys for Defendants,
Blue Bell, PA 19422-0765         Elite Restoration, Inc. and Charles
Phone (610) 941-2519          Culbertson, III

| | | |
|---|---|---|
| THE ENCLAVE CONDOMINIUM | : | SUPERIOR COURT OF NEW JERSEY |
| ASSOCIATION, INC. | : | LAW DIVISION |
| Plaintiff, | : | ATLANTIC COUNTY |
| v. | : | |
| | : | DOCKET NO.:  ATL-L-001903-21 |
| ELITE RESTORATION, INC., CHARLES | : | |
| CULBERTSON, III, STRUCTURAL | : | CIVIL ACTION |
| DESIGN ASSOCIATES, INC., ANDREW | : | |
| SCHEERER and JOHN DOE(S) 1-5, | : | |
| JOHN DOE(S) 6-10 and XYZ CORP(S) 1-10 | : | |
| | : | |
| | : | |
| Defendants. | : | |

---

## ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM

---

Dated:  October 4, 2021      On the Pleading:     William D. Auxer, Esquire

7180711v1

Defendant Elite Restoration, Inc. and Charles Culbertson, III (collectively, "**Elite**") by and through its undersigned counsel, hereby answers the Verified Complaint, together with affirmative defenses and counterclaims, as follows:

## PARTIES

1.  Admitted upon information and belief.

2.  Admitted.

3.  Admitted in part, denied in part. Denied as stated.  It is admitted only that Defendant, Charles Culbertson, III is the president of Elite and has a place of business at 24 Hagerty Blvd., Suite 2, West Chester, Pennsylvania. The remaining averments are denied.

4.  Admitted upon information and belief.

5.  Admitted upon information and belief.

6.  Denied.   After reasonable investigation, Elite is without sufficient information as to the identify of John Doe(s) 1-5 and thus denies the averments in this paragraph.

7.  Denied.  After reasonable investigation, Elite is without sufficient information as to the identify of John Doe(s) 6-10 and thus denies the averments in this paragraph.

8.   Denied.  After reasonable investigation, Elite is without sufficient information as to the identify of XYZ Corp(s) and thus denies the averments in this paragraph.

## FACTS COMMON TO ALL COUNTS

9.  All paragraphs above are incorporated herein by reference.

10. Admitted upon information and belief.

11. Denied.

12. Denied.

13. Admitted in part, denied in part.  It is admitted only that upon belief Plaintiff engaged SDA related to the renovation project at The Enclave Condominium building (the "**Project**").   All

averments regarding the scope of the engagement between Plaintiff and SDA are denied. The remaining averments in this paragraph are denied.

14. Denied.

15. Admitted in part, denied in part. It is admitted only that the specifications did not expressly state for the scuppers to be adjusted to accommodate the water flowing off the balcony deck. The remaining averments in this paragraph are denied.

16. Denied. After reasonable investigation, Elite is without sufficient information as to admit or deny the averments.

17. Admitted in part, denied in part. It is admitted only that Elite submitted several bids for the project. The remaining averments in this paragraph are denied. It is denied that Exhibit contains all the bids submitted by Elite for the project.

18. Denied. After reasonable investigation, Elite is without sufficient information as to admit or deny the averments in this paragraph.

19. Admitted in part, denied in part. It is admitted upon belief that Plaintiff engaged SDA to act as the engineer of record for the Project. Elite is without knowledge sufficient to admit or deny the remaining averments in this paragraph.

20. Denied. Elite is without knowledge sufficient to admit or deny the averments in this paragraph.

21. Denied. Elite is without knowledge sufficient to admit or deny the averments in this paragraph.

22. Admitted in part; denied in part. It is admitted only that AIA stands for American Institute of Architect. The remaining averments in this paragraph are denied. It is specially denied that the contract forms are to be used only for AIA members.

23. Denied.

24. Admitted in part, denied in part.  It is admitted only that SDA and Plaintiff supplied Elite with an AIA Document A104-2017 Contract ("**AIA Contract**").  The remaining averments in this paragraph are denied.

25. Admitted in part, denied in part.  It is admitted only that Section 3.2.2 of the Contract states $2,770,224.00 as "Grand Total All Drops & Performance Bond."  The remaining averments in this paragraph are denied.

26. Admitted.

27. Admitted upon information and belief.

28. Admitted upon information and belief.

29. Admitted upon information and belief.

30. Admitted in part, denied in part.  It is admitted only that Plaintiff, SDA, and Elite executed a change order dated December 6, 2019 adjusting the Contract Sum to $2,762,645.34.  The remaining averments in this paragraph are denied.

31. Denied.   It is specifically denied that Elite performed any additional work without authorization from Plaintiff and SDA. To the contrary, Elite was given verbal authorization and approval by Plaintiff and SDA to perform additional work.  SDA prepared the change orders for Elite for the additional work.

32. Denied.

33. Denied.

34. Admitted.

7180711v1

35. Admitted in part, denied in part.  It is admitted only that Elite submitted a change order request in the amount of $1,379,950.00 for additional work relating to the sloping the skim coat for the balconies.  The remaining averments in this paragraph are denied.

36. Denied as stated.  The total amount of the change order requests submitted by Elite for the additional work relating to the relocation of scuppers and additional skim coat sloping for the balconies is $1,904,332.00.

37. Admitted in part, denied in part. It is admitted only that SDA denied the change order requests submitted by Elite for the additional work relating to the relocation of scuppers and additional skim coat sloping for the balconies.  The remaining averments in this paragraph are denied.

38. Denied.

39. Admitted in part, denied in part.  It is admitted that Elite filed a Construction Lien pursuant to N.J.S.A. 2A:44A-1 to 38 on or about August 4, 2020.  The remaining averments in this paragraph are denied.

40. Admitted.

41. Admitted.

42. Admitted.

43. Denied.  The work that can be claimed in a Construction Lien is limited pursuant to N.J.S.A 2A:44A-1 ("**Construction Lien Law**"), which does not bar other claims arising from the Project.

44. Admitted in part, denied in part.  It is admitted only that the arbitrator off set the lien claim and determined the amount of the claim to be $187,014.53.  The remaining averments in this paragraph are denied.

45. Admitted.

46. Admitted.

47. Admitted in part, denied in part. It is admitted only that Enclave satisfied the lien and Elite thereafter discharged the lien as of record on October 20, 2022. The remaining averments in this paragraph are denied.

48. Admitted.

## FIRST COUNT

### (Declaratory Judgment Staying Arbitration)

49. All paragraphs above are incorporated herein by reference.

50. Denied as stated.  Only claims pursuant to New Jersey's Construction Lien Law were before the arbitrator.  The arbitrator determined that $2,762,645.34 was the amount of the contract subject to the Construction Lien Claim.

51. Admitted.

52. Denied as stated.  The arbitrator determined that the total amount subject to Elite's Lien Claim was $187,014.53.

53. Admitted.

54. Denied.

55. Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## SECOND COUNT

### (Declaratory Judgment in the Alternative Staying Arbitration)

56. All paragraphs above are incorporated herein by reference.

57. Denied.

7180711v1

58. Denied.

59. Denied. Elite is without knowledge sufficient to admit or deny the averments in this paragraph.

60. Denied.  Elite is without knowledge sufficient to admit or deny the averments in this paragraph.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## THIRD COUNT

### (Declaratory Judgment in the Alternative Staying Arbitration)

69. All paragraphs above are incorporated herein by reference.

70. Denied. Elite is without knowledge sufficient to admit or deny the averments in this paragraph.

71. Admitted.

72. Denied.

7180711v1

73. Denied.

74. Denied.

75. Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

### FOURTH COUNT

### (Per Se Consumer Fraud Act Violation Against Elite)

76. All paragraphs above are incorporated herein by reference.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## FIFTH COUNT

### (Consumer Fraud Act Violation Against Elite and Charles Culbertson, III)

87. All paragraphs above are incorporated herein by reference.

88. Denied.

89. Denied.

90. Denied.

91. Denied.  It is specifically denied that Elite overbilled Plaintiff.

92. Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## SIXTH COUNT

### (Consumer Fraud Act Violation Against Elite and Charles Culbertson, III)

93. All paragraphs above are incorporated herein by reference.

94. Denied.

95. Denied.  It is specifically denied that Elite engaged in any negligent, deceptive, or fraudulent behavior.

96. Denied.  It is specifically denied that Elite engaged in any deceptive or fraudulent behavior.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## SEVENTH COUNT

### (Common Law Fraud Against Elite and Charles Culbertson, III)

7180711v1

97. All paragraphs above are incorporated herein by reference.

98. Denied.  It is specifically denied that Elite engaged in any fraudulent behavior.

99. Denied.  It is specifically denied that Elite engaged in any fraudulent or negligent behavior.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## EIGHTH COUNT

### (Breach of Contract Against Elite)

100.   All paragraphs above are incorporated herein by reference.

101.   Denied.

102.   Denied.

103.   Denied.  It is specifically denied that Elite performed deck sloping work in a negligent manner.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## NINETH COUNT

### (Negligence Against Elite)

104.   All paragraphs above are incorporated herein by reference.

105.   Denied.  It is specifically denied that Elite performed work in a negligent manner or in a manner inconsistent with job specifications.

106.   Denied.  It is specifically denied that Elite performed work in a negligent manner.

107.   Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## TENTH COUNT

### (Malpractice Against Structural Design Associates, Inc. and Andrew Scheerer In the Alternative.)

108.       All paragraphs above are incorporated herein by reference.

109 to 115.   The averments in these paragraphs are directed to defendants other than Defendants Elite Restoration, Inc. and Charles Culbertson, III, and therefore no response is required by Defendants Elite Restoration, Inc. and Charles Culbertson, III.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## ELEVENTH COUNT

### (Declaratory Judgment in the Alternative Compelling Structural Design Associates, Inc. and Andrew Scheerer to Participate in Arbitration)

116.       All paragraphs above are incorporated herein by reference.

117 to 127. The averments in these paragraphs are directed to defendants other than Defendants Elite Restoration, Inc. and Charles Culbertson, III, and therefore no response is required by Defendants Elite Restoration, Inc. and Charles Culbertson, III.

## TWELFTH COUNT

### (Declaratory Judgment of Accord and Satisfaction Against Elite)

128.       All paragraphs above are incorporated herein by reference.

129.       Denied.

7180711v1

130.    Denied.

131.    Denied.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim against Elite Restoration, Inc. ("**Elite**") and Charles Culbertson, III ("**Culbertson**") upon which relief can be granted.

2.    Plaintiff's claims are barred or limited by the doctrines of waiver, estoppel and/or laches.

3.    Plaintiff's claims are barred or limited by the applicable statute of limitations and/or statute of frauds.

4.    Plaintiff's claims are barred or limited by the doctrines of release and/or consent.

5.    Plaintiff's claims are barred or limited by the doctrine of unclean hands.

6.    Plaintiff's claims are barred by the express terms of the Contract.

7.    Plaintiff's claims are barred by the economic loss doctrine.

8.    Plaintiff's claims are barred or limited by Plaintiff's breach of the contract.

9.    Plaintiff's claims are barred or limited by Plaintiff's breach of its duty of good faith.

10.    Plaintiff's claims are barred or limited by Plaintiff's own actions and/or omissions.

11.    Plaintiff failed to mitigate its damages, if any.

12.    Any losses suffered by Plaintiff were caused by Plaintiff's own acts or omissions and/or the acts or omissions of third parties over whom Elite and Culbertson had no control.

13.    Plaintiff has failed to join all necessary parties, pursuant to N.J. Court R. 4:28-1.

14.    Plaintiff's claims are barred or limited by the doctrine of offset.

15.    Plaintiff's claims are barred or limited by their failure to disclose conditions materially effecting the work under the Contract.

16.    Plaintiff's claims are barred or limited by its improper conduct.

17.    Plaintiff's claims are subject to and barred by an agreement to arbitrate.

18.    Plaintiff is not entitled to attorneys' fees and costs in its negligence and declaratory relief claims.

19.    Plaintiff's claims are barred or limited by the claims set forth in the Counterclaim below, which are incorporated herein by reference.

20.    Elite and Culbertson reserve the right to amend its Answer to add additional defenses and/or new parties/claims, as the facts revealed in discovery may warrant.

**WHEREFORE**, Defendants Elite Restoration, Inc. and Charles Culbertson, III demand that the Court enter judgment in its favor and against Plaintiff The Enclave Condominium Association, Inc. and dismiss the Verified Complaint.

## COUNTERCLAIM

### Background

1.    All paragraphs above are incorporated herein by reference.

2.    This dispute is between **Elite Restoration, Inc.** (hereinafter "Elite") and **The Enclave Condominium Association, Inc.** (hereinafter "The Association") in connection with a written contract (the "Contract") dated April 19, 2018 entered into between Elite and The Association for a project known as the Enclave Condominium Façade & Balcony Coating Project #16041 (the "Project").

7180711v1

3.     The Association is a community association for a condominium known as "The Enclave," which is a multi-story and multi balcony high rise residential condominium building located at 3851 Boardwalk, Atlantic City, New Jersey 08401 ("Property").

4.     The work under the Contract and for the Project included certain restoration work for the building façade and unit balconies.

5.     This claim relates to two change order requests submitted by Elite to The Association in connection with the Project as a result of change conditions encountered by Elite while performing the balcony resurfacing work at The Enclave.

6.     The original scope of the balcony resurfacing work consisted of removing the existing waterproofing surface coating on the balcony, concrete patching of no more than 2% of the balcony area (i.e., the total square footage of the balcony surface), placement and sloping of a skim coat on the existing concrete deck of no more than 50% per balcony area (i.e., the total square footage of the balcony surface) and installation of a liquid applied waterproofing membrane manufactured by Sika.

7.      The Association and its engineer were responsible for defining the scope of work in the Contract, not Elite.

8.     The Association and its engineer consciously decided to limit the scope of work and set the allowances for the concrete deck sloping and concrete patching at the percentages mentioned above to reduce the bid prices in order to meet The Association's budget for the Project.

9.     Their collective decision to limit the scope of work and not provide a design that fully addressed the drainage issues to alleviate The Association's concerns about water ponding on the balconies resulted in Elite having to perform the additional work that comprised the change order claims that are in dispute and subject to this counterclaim.

10.     The original base contract scope of work did not include any adjustment of the existing scupper drains on the balconies nor did it include any work to enhance drainage other than installing and sloping of a skim coating of no more than 50% of the balcony area.

11.     Because of unknown, concealed conditions with respect to the concrete underlying the existing topping coat for the balconies and the balcony threshold elevation, and in order to satisfy The Association's requests to address water ponding on the balconies, Elite had to: (1) remove a significant amount more of the existing balcony concrete to a depth more than required under the contract documents; (2) mix and re-pour concrete to replace the excess removed concrete material; (3) install and slope vastly more than a skim coat; (4) adjust the scupper drains on the balconies by, among other work, re-drilling openings for them as they were set too high to allow water to adequately drain from the resurfaced balconies; and (5) clean out the existing vertical drainage slots along the edge of the concrete balconies where they met the vertical balcony wall.

12.     Elite timely notified The Association's engineer (Andrew Scheerer of Structural Design Associates) of the changed conditions and additional work associated therewith and subsequently issued a formal notification of the changed conditions to The Association's engineer on April 9, 2019 through a document titled "Change In Condition No. 1" summarizing the changed conditions and the additional work arising from such changed conditions. A true and correct copy of "Change In Condition No. 1" is attached hereto as **Exhibit 1**.

13.     On October 17, 2019, Elite sent a letter to The Association indicating that Elite had exceeded the aggregate allowance for the skim coat sloping and requested a meeting. A follow up request for a meeting was sent by Elite on November 26, 2019 through the submission of "Change In Condition No. 2."

14.     Elite eventually had the meeting with representatives of The Association, which at said meeting, the Association, through its representative(s), emphasized its concerns about water ponding on certain balconies and requested and/or directed Elite to re-work certain unit balconies to address the water ponding even though the skim coat sloping allowance had been exceeded.

15.     The Association's request and/or directive, through its representative(s), at the time was to perform the necessary work to address the water ponding knowing that such work was beyond the specified allowances and original scope of work in the Contract.

**Additional Sloping Change Order Request**

16.     On August 20, 2019, Elite submitted a proposed change order to The Association for the additional skim coat sloping work.

17.     Subsequently, Elite submitted a supplemental and revised change order request for the additional skim coat sloping work, identified as Change Order Request # 6 titled "Additional Balcony Deck Surface and Re-Sloping Work" dated 6/09/2020 in the sum of $1,379,950.00 ("Additional Sloping Change Order Request"). A true and correct copy of the Additional Sloping Change Order Request is attached hereto as **Exhibit 2**.

18.     In a letter dated August 3, 2020, The Association, through its engineer, improperly rejected the Additional Sloping Change Order Request.

**Scuppers Change Order Request**

19.     Elite formally notified The Association's engineer on April 19, 2019 of the scupper relocation work being performed, which was not in the original scope of work.

20.     On July 1, 2019, Elite submitted a proposed change order for time and material costs associated with the additional work relating to the adjustment of the scupper drains for a few of the units.

7180711v1

21.     The engineer observed and acknowledged the additional scupper work being performed and at no time instructed Elite to stop performing the additional work as the engineer know that this work was necessary to meet The Association's directive to address the water ponding on the balconies.

22.     Elite submitted proposed change orders on November 19, 2019 and again on December 5, 2019 for the adjustment of the scuppers and cleaning out the slots along the balcony edge where it meets the vertical wall to aid water drainage off of the unit balconies.

23.     In December 2019, The Association's engineer acknowledged that Elite was entitled to a change order for the additional work relating to the adjustment of the scupper drains and would process a change order for the additional work, but the engineer never did so.

24.     Elite submitted a proposed change order (PCO No. 1) titled "Scupper and Slot" dated January 7, 2020 in the sum of $524,432.00, which included the additional work relating to the scuppers and cleaning out the slots for all unit balconies. A true and correct copy of PCO No. 1 is attached hereto as **Exhibit 3**.

25.     In May of 2020, The Association rejected Elite's change order request stating that the "change order is excessive, unreasonable, and should have been included in the specifications or bid as an extra."

26.     After being rejected by The Association, Elite submitted a supplemental change order request through Change In Condition (CIC) No. 5 dated 6/19/20, which provided additional information and support for the change order request. A true and correct copy of CIC No. 5 is attached hereto as **Exhibit 4**.

27.     PCO No. 1 and CIC No. 5 are collectively referred as the Scupper Change Order Request.

28.     In a letter dated August 3, 2020, The Association's engineer improperly rejected the Scupper Change Order Request.

## FIRST COUNT

### Violation of New Jersey's Prompt Payment Act

29.     The averments set forth paragraphs 1 through 28 above are incorporated herein by reference as though fully set forth herein.

30.     Elite is a "prime contractor" within the meaning of the New Jersey Prompt Payment Act (**"PPA"**), *N.J.S.A.* §2A:30A-1 *et seq.*

31.     The labor and materials furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request constitute "improvements" within the meaning of the PPA.

32.     The labor and the materials furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request have been accepted by The Association.

33.     The Association's refusal to pay the labor and materials furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request constitutes a violation of the PPA, entitling Elite to the principal amount owed plus interest at the prime rate plus 1% for the duration of the late payment, and reasonable costs and attorneys' fees.

**WHEREFORE**, Defendant/Counterclaim-Plaintiff, Elite Restoration, Inc. seeks judgment in its favor and relief against Plaintiff/Counterclaim-Defendant, The Enclave Condominium Association, Inc., as follows:

7180711v1

(a)      Declaration of the amount due and owing to Elite  under the Contract in the sum of $1,904,382.00;

(b)      Interest, attorneys' fees and cost of suit; and

(c)      Any other relief the Court deems equitable and proper.

## SECOND COUNT

### Breach of Contact

34.      The averments set forth paragraphs 1 through 33 above are incorporated herein by reference as though fully set forth herein.

35.      The Contract is a valid and binding agreement entered into between The Association and Elite.

36.      While Elite was performing work under the Contract, The Association, through its representative(s) requested and/or directed Elite to furnish additional labor and material for the Project, which Elite requested additional compensation through the Additional Sloping Change Order Request and Scupper Change Order Request.

37.      The Association materially breached the Contract by failing and refusing to pay Elite for labor and materials furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

38.      The Association's failure and refusal to pay Elite for the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request constitutes a material breach of the Contract.

39.      As a result of The Association's substantial and material breach, Elite has suffered and continues to suffer substantial damages

**WHEREFORE**, Defendant/Counterclaim-Plaintiff, Elite Restoration, Inc. seeks judgment in its favor and relief against Plaintiff/Counterclaim-Defendant, The Enclave Condominium Association, Inc., as follows:

(a)    Declaration of the amount due and owing to Elite  under the Contract in the sum of $1,904,382.00;

(b)    Interest, attorneys' fees and cost of suit; and

(c)    Any other relief the Court deems equitable and proper.

## THIRD COUNT

### Breach of Implied Covenant of Good Faith and Fair Dealing

40.    The averments set forth paragraphs 1 through 39 above are incorporated herein by reference as though fully set forth herein.

41.    Under New Jersey law, the Contract contained an implied covenant of good faith and fair dealing.

42.    The Association conduct as set forth above constitutes a breach of the implied covenant of good faith and fair dealing.

43.    The Association's breach of the implied covenant of good faith and fair dealing is the direct and proximate cause of the substantial damages suffered by Elite.

**WHEREFORE**, Defendant/Counterclaim-Plaintiff, Elite Restoration, Inc. seeks judgment in its favor and relief against Plaintiff/Counterclaim-Defendant, The Enclave Condominium Association, Inc., as follows:

(a)    Declaration of the amount due and owing to Elite  under the Contract in the sum of $1,904,382.00;

(b)    Interest, attorneys' fees and cost of suit; and

7180711v1

(c)       Any other relief the Court deems equitable and proper.

## **FOURTH COUNT**

### **Unjust Enrichment**

44.     The averments set forth paragraphs 1 through 43 above are incorporated herein by reference as though fully set forth herein.

45.     If the Contract is found to be invalid, Elite is entitled to recovery based on the doctrine of unjust enrichment for payment relating to the value of labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

46.     The Association received a benefit of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

47.     The Association's receipt and retention of the benefit of the value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request without full payment to Elite for the value of such work has resulted in an unjust enrichment to The Association.

48.     The Association knew at the time of performance that Elite reasonably expected to be fairly compensated for the of the of the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

49.     The Association has an obligation to pay Elite the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

50.     The amount unjustly retained by The Association is equivalent to the value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

7180711v1

51.     It would be inequitable to allow The Association to retain the full benefit of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request without fully compensating Elite for the same.

52.     As a result of the Association's failure to pay Elite the full amount for the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request, the Association has retained a benefit and been unjustly enriched at Elite's expense.

**WHEREFORE**, Defendant/Counterclaim-Plaintiff, Elite Restoration, Inc. seeks judgment in its favor and relief against Plaintiff/Counterclaim-Defendant, The Enclave Condominium Association, Inc., as follows:

(a)     Declaration of the amount due and owing to Elite under the Contract in the sum of $1,904,382.00;

(b)     Interest, attorneys' fees and cost of suit; and

(c)     Any other relief the Court deems equitable and proper.

## FIFTH COUNT

### Quantum Meruit

53.     The averments set forth paragraphs 1 through 52 above are incorporated herein by reference as though fully set forth herein.

54.     If the Contract is found to be invalid, Elite is entitled to recovery based on the doctrine of quantum meruit for payment relating to the value of labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

7180711v1

55.     Elite furnished labor and material relating to the Additional Sloping Change Order Request and Scupper Change Order Request in good faith and per the request and/or direction of The Association through its representative(s).

56.     The labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request has been accepted by The Association.

57.     Elite expected to be fairly compensated for the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

58.     The Association knew at the time of performance that Elite reasonably expected to be fairly compensated for the of the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

59.     The Association has an obligation to pay Elite for the full value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

60.     The charges by Elite for the value of the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request is fair and reasonable.

61.     As a result of the foregoing, Elite is entitled to quantum meruit compensation for the labor and material furnished by Elite relating to the Additional Sloping Change Order Request and Scupper Change Order Request.

**WHEREFORE**, Defendant/Counterclaim-Plaintiff, Elite Restoration, Inc. seeks judgment in its favor and relief against Plaintiff/Counterclaim-Defendant, The Enclave Condominium Association, Inc., as follows:

7180711v1

(a)     Declaration of the amount due and owing to Elite  under the Contract in the sum of

$1,904,382.00;

(b)     Interest, attorneys' fees and cost of suit; and

(c)     Any other relief the Court deems equitable and proper.


Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**


By:_____
     **WILLIAM D. AUXER, ESQUIRE**
     Attorneys for Defendant/Counterclaim Plaintiff

Date:  October 4, 2021

7180711v1

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to Rule 4:25-4, William D. Auxer, Esquire is hereby designated as trial counsel

on behalf of Defendant/Counterclaim-Plaintiff Elite Restoration, Inc. in the above matter.

### KAPLIN STEWART MELOFF REITER & STEIN, P.C.

By: _____

**WILLIAM D. AUXER, ESQUIRE**
Attorneys for Defendant/Counterclaim Plaintiff

Dated: October 4, 2021

7180711v1

## RULE 4:5-1 CERTIFICATION

I hereby certify to the best of my knowledge, information and belief that the matter in controversy is not the subject of any other pending action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if the foregoing statements are willfully false I am subject to punishment.

I further certify that there are no other persons that should presently be joined in this action.

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

**By:** _____
     **WILLIAM D. AUXER, ESQUIRE**
     Attorneys for Defendant/Counterclaim Plaintiff


## RULE 1:38-7(c) CERTIFICATION

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

**By:** _____
     **WILLIAM D. AUXER, ESQUIRE**
     Attorneys for Defendant/Counterclaim Plaintiff

7180711v1